IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 17-cv-00651-PAB

DWAN R. PETTI,

      Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

      Defendant.
_____

**ORDER**
_____

      This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Dwan R. Petti on March 13, 2017. Plaintiff seeks review of the final decision of defendant Nancy A. Berryhill (the "Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

**I. BACKGROUND**

      On January 17, 2012, plaintiff applied for a period of disability and disability insurance benefits under Title II of the Act. R. at 22. Plaintiff alleged that she had been disabled since December 20, 2011, *id.*, but she has amended her claim to allege disability beginning January 1, 2012. R. at 530. Plaintiff's disability insurance benefits ended on March 31, 2013. *Id.* Thus, the relevant period for plaintiff's claim is January

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

1, 2012 through March 31, 2013. After an initial administrative denial of her claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on April 9, 2013. R. at 22. On May 10, 2013, the ALJ issued a decision denying plaintiff's claim. R. at 32. Plaintiff appealed the decision to the district court, and, on January 20, 2016, District Judge William J. Martinez vacated the ALJ's decision and remanded the case. R. at 601; *Petti v. Colvin*, No. 15-cv-0256-WJM, 2016 WL 232775, at *6 (D. Colo. Jan. 20, 2016). Judge Martinez found that the ALJ "did not follow the correct legal standards in considering the opinion of Plaintiff's treating psychiatrist and treating psychologist," which he noted were "uncontradicted by other medical professionals." R. at 596-97. Judge Martinez also found that he could not "determine, from the ALJ's decision, whether the ALJ's RFC accounted for Plaintiff's moderate limitations in concentration, persistence, and pace." R. at 599. Following remand, on September 22, 2016, the ALJ held a second hearing. R. at 530. On January 11, 2017, the ALJ issued a decision again denying plaintiff's claim. R. at 541. The ALJ found that plaintiff had the following severe impairments: bipolar disorder, depression, post-traumatic stress disorder ("PTSD"), and liver disease. R. at 532. The ALJ concluded that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id*. at 533, and ruled that plaintiff had the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels, but with the following nonexertional limitations: [Plaintiff] required nonproduction oriented work which is unskilled, with a SVP skill level of one or two, not in close proximity to co-workers or supervisors (meaning that she could not function as a member of a team), and minimal to no direct contact with the public.

R. at 534. Based upon this RFC and in reliance on the testimony of a vocational expert

("VE"), the ALJ concluded that plaintiff is capable of performing jobs that exist in significant numbers in the national economy. R. at 540. Specifically, the ALJ identified three positions that plaintiff could perform: dry cleaner, flagger, and microfilm document preparer. *Id*. Each of these positions is performed at a light or sedentary exertional level and is classified as unskilled, with a specific vocational preparation ("SVP") level of two. R. at 540.

The Appeals Council did not review the ALJ's denial of her claim. Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II. STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine

3

the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

4

§ 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV. DISCUSSION

Plaintiff claims that the ALJ erred in the following ways: (1) failing to capture the vocational meaning of plaintiff's concentration, persistence, or pace limitation and providing conflicting findings on the extent of that limitation; (2) improperly weighing the medical opinion evidence; (3) failing to show that there were substantial numbers of jobs that exist in the national economy that plaintiff's RFC allowed her to perform; and (4) finding that plaintiff's allegations about the disabling nature of her symptoms were not consistent with the medical evidence. Docket No. 13. Because it is dispositive, the Court limits its discussion to the ALJ's weighing of the medical opinion evidence.

5

Three doctors provided medical opinions about plaintiff's limitations and the ALJ rejected each of them.  See R. at 538.  Because plaintiff does not claim that the ALJ erred in rejecting the opinion of the state agency psychiatric consultant, the Court focuses on the opinions of plaintiff's two treating doctors.[2]

Jeffery Harazin, M.D. is a psychiatrist who has treated plaintiff regularly since 2006.  R. at 757.  Over this period, he met with and evaluated plaintiff numerous times, repeatedly adjusting her medications in an attempt to control her symptoms and reduce side effects.  See R. at 536.  On May 30, 2012, Dr. Harazin filled out a "Psychiatric Review Technique" questionnaire on which he indicated that plaintiff suffered from all of the depressive symptoms and manic symptoms listed on the questionnaire and had a "history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)." R. at 371.  In rating plaintiff's functional limitations, Dr. Harazin noted that plaintiff had a marked limitation to her activities of daily living and extreme limitations to maintaining social functioning and maintaining concentration, persistence, or pace.  R. at 378.  On the same day, Dr. Harazin completed a "Revised Medical Source Statement of Ability to Do Work-related Activities (Mental)" questionnaire where he noted a number of moderate to extreme limitations resulting from plaintiff's mental health issues, including bipolar disorder.  R. at 384-86.  Dr. Harazin also wrote that plaintiff "has difficulty with

---

[2] James J. Wanstrath, Ph.D., the state agency psychiatric consultant, reviewed plaintiff's medical records on May 25, 2012 and concluded that "there is insufficient evidence to fully evaluate [plaintiff's] mental claim."  R. at 363.  In rejecting Dr. Wanstrath's opinion, the ALJ stated that, "[b]ecause subsequent evidence received at the hearing level is sufficient to fully evaluate the claim, the opinion of insufficiency is no longer valid and the undersigned gives it no weight."  R. at 538.

social interactions and leaves home rarely." R. at 385. Following the remand, on July 12, 2016, Dr. Harazin filled out a "Mental Residual Functional Capacity Questionnaire" on which he noted that plaintiff "will always struggle with controlling mood swings" and that, due to medication, she "loses time [and] has no memory of what she did." R. at 757. Dr. Harazin opined that 20% or more of the time plaintiff would be unable to "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace," R. at 758; that she would be precluded from performing her job or off task 20% of the time; and that she would be absent from work due to her impairments or required treatment four days per month. R. at 759.

J. Lewis Mylar, Ph.D. is clinical psychologist who reports seeing plaintiff approximately thirty times between February 2010 and March 2012. R. at 360. The records of his visits are not in the record on appeal because he did not release them. On March 27, 2012, Dr. Mylar wrote a "Narrative Report" about plaintiff's treatment in which he stated that plaintiff "frequently appears exhausted" and "demonstrates a range of anxiety, anger, fear, withdrawl [sic] with little expression of comfort, satisfaction [sic] or well-being." R. at 361. Dr. Mylar stated that plaintiff was "markedly depressed" and her "concentration, as well as attention is impaired" even though she was fully oriented, intellectually tested within the normal range, and "initially demonstrates this level of functioning in the workplace." Id. On March 19, 2013, Dr. Mylar completed a "Questionnaire" on which he indicated that he agreed with the opinions expressed by Dr. Harazin in the May 30, 2012 questionnaires and indicated that he did not believe that "Dwan Petti is capable of engaging in any sustained, consistent activity." R. at 504.

7

The Tenth Circuit's "case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). In the first step, the ALJ must consider whether the treating physician's opinion is entitled to controlling weight. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188, *1 (July 2, 1996).

If the opinion is not given controlling weight, the ALJ will proceed to the second step of the inquiry. In the second step, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR [§§] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, *4. The factors that must be applied in determining what weight to give an opinion are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins v.*

*Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)); *see also* 20 C.F.R. § 404.1527(c). "[A]n ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and alterations omitted). Failure to apply this analytical framework and to provide sufficiently specific, legitimate reasons tied to the factors for the weight given to a treating physician's opinion warrants reversal. *Watkins*, 350 F.3d at 1300-01.

> In rejecting Dr. Harazin's and Dr. Mylar's opinions, the ALJ stated:
>
> The undersigned does not give either Harazin's or Dr. Myler's [sic] opinions controlling weight because they are not well-supported by medically acceptable clinical diagnostic techniques. Furthermore, both Dr. Harazin's and Dr. Myler's [sic] opinions are contradictory to the medical evidence. Dr. Harazin's treatment notes in November 2011 and in January 2012 show the claimant is depressed and has a flat affect (Exhibit 3F). In May 2012, Dr. Harazin found that the claimant was less depressed. Her symptoms were responding to the medication. In August 2012, Dr. Harazin found that the claimant was "doing well". Her mood was euthymic and congruent. In both November 2012 and January 2013; Dr. Harazin found that the claimant's condition remained stable and noted that she denied any depression or any other symptoms (Exhibit 11F).

R. at 538.

Plaintiff argues that the ALJ improperly rejected Dr. Harazin's and Dr. Mylar's opinions as lacking support and being contradicted by plaintiff's treatment notes. Docket No. 13 at 14. With respect to Dr. Harazin, plaintiff argues that "Dr. Harazin documented his clinical and diagnostic techniques required to support his opinions" in the Psychiatric Review Technique questionnaire and throughout his treatment notes. *Id*. (citing R. 248-264, 368-381, 382-386, 492-495, 504-521, 757-780, 836-838).

9

Plaintiff argues that "it is simply unexplained why his notes do not support his opinions." *Id*. With respect to Dr. Mylar, plaintiff acknowledges that the underlying treatment notes are not in the record but argues that Judge Martinez rejected the lack of treatment notes as a valid basis to discount Dr. Mylar's opinion because Dr. Mylar discusses plaintiff's "observed signs and symptoms" in his opinion. R. at 596 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)).[3] Plaintiff further argues that the ALJ's conclusion that Dr. Harazin's and Dr. Mylar's opinions are contradicted by the medical evidence is a product of the ALJ improperly cherry-picking treatment records and rendering a lay interpretation about the meaning of plaintiff's medical records. Docket No. 13 at 12 (citing *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)).

Defendant responds that the ALJ "reasonably relied on treatment records showing improvement with medication" and that the ALJ "can discount a doctor's opinion based on the fact that it is inconsistent with the doctor's own treatment notes." Docket No. 14 at 11-12 (citing *Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013); *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015)). Defendant claims that the ALJ properly considered whether the opinions were consistent with the record as a whole and rejected them because they were inconsistent with the doctors' opinions that plaintiff had "marked or extreme limitations." *Id*. at 12.

In summarizing the medical evidence, the ALJ stated that "the claimant's medical

---

[3] As plaintiff points out, the "ALJ's findings about Dr. Mylar's opinions are exactly the same reasons" that were at issue in the prior appeal. Docket No. 13 at 16 (*compare* R. at 537 (current decision) *with* R. at 29 (prior decision)). Judge Martinez rejected several of the ALJ's bases for discounting the medical opinion evidence that reappear in the ALJ's second decision or that defendant argues support the ALJ's conclusions. *See* R. at 595-97; Docket No. 14 at 9.

records illustrate that while the claimant has been diagnosed with and treated for bipolar disorder and PTSD, these conditions have responded to treatment." R. at 536. As noted by the ALJ, the treatment notes in the record do contain several instances where plaintiff reported a lack of depressive symptoms. R. at 538. Although defendant argues that this analysis provides a sufficient basis to reject the opinions of plaintiff's treating doctors and the Court must not reweigh the evidence, it is unnecessary to reweigh the evidence here to find that the ALJ relied on improper reasoning and that the ALJ's conclusions are not supported by substantial evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The ALJ concluded that the medical records contradict the doctors' opinions based on the ALJ's lay evaluation, not medical evidence. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (internal quotation marks omitted). In particular, the ALJ acknowledges that plaintiff's bipolar disorder is a severe impairment. R. at 532. The Commissioner's guidelines for evaluating bipolar disorder explain that bipolar disorder is characterized by variation in mood, rather than a static depressed affect. *See* 20 C.F.R. § Pt. 404, Subpt. P, App'x 1, 12.00.B.3 ("characterized by an irritable, depressed, elevated, or expansive mood"). Neither Dr. Harazin nor Dr. Mylar claims that plaintiff is always depressed; rather, they report a bipolar diagnosis. In this context, there is no contradiction between sporadic reports that plaintiff was not depressed and Dr. Harazin's opinions about the effects of plaintiff's bipolar disorder. This contrasts

with both *Newbold* and *Vigil*, cited by defendant, where the medical opinion evidence directly contradicted contemporaneous reports regarding the claimants' abilities and condition, respectively. *Newbold*, 718 F.3d at 1266 (report dated the same day as the opinion had contradictory information about claimant's ability to perform activities of daily living); *Vigil*, 805 F.3d at 1203 (examination results showed "full, normal, active range of motion" in knee, but opinion provided a stand/walk restriction based on knee injury). The ALJ's conclusion that plaintiff's disorders are well controlled with medication is similarly lacking in support and founded on only lay opinion and speculation. Notably, in 2016, after treating plaintiff and adjusting her medications for approximately ten years, Dr. Harazin opined that plaintiff "will always struggle with controlling mood swings" and that, due to medication she takes to control her mood, she "loses time [and] has no memory of what she did," but that she needs to keep taking the medicine to manage her condition. R. at 757. Hence, there is no reason to believe Dr. Harazin's treatment notes are inconsistent with Dr. Harazin's and Dr. Mylar's opinion as to plaintiff's limitations other than the ALJ's claim that they are not consistent, which is not a valid basis. *See Langley*, 373 F.3d at 1121 (finding that there was "no legal[] or evidentiary basis" to find a doctor's opinion was unsupported based on the ALJ's interpretation of the underlying evidence). The Court finds that the "the ALJ overstepped [her] bounds into the province of medicine," which is reversible error. *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996).

The ALJ's conclusion that Dr. Harazin's and Dr. Mylar's opinions are "not well-supported by medically acceptable clinical and diagnostic techniques" likewise does not stand up to scrutiny. R. at 538. The fact that Dr. Harazin's opinions do not themselves

contain the underlying clinical and diagnostic information and, instead, take the form of check-box forms does not itself provide a basis to conclude that his opinions are unsupported. *See Bonilla v. Colvin*, No. 12-cv-02182-WYD, 2013 WL 5379881, at *4 (D. Colo. Sept. 26, 2013). "[S]uch a form from a treating physician, as compared to a nontreating doctor, cannot be discounted merely because it was a check-box form." *Id*. (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008)); *see also Magner v. Colvin*, 2017 WL 193213, at *2 (D. Kan. Jan. 18, 2017). Despite Judge Martinez' ruling that Dr. Mylar's observations should be considered as evidence, the ALJ does not explain why Dr. Mylar's reported observations do not "constitute specific medical findings" that support his opinion. *Robinson*, 366 F.3d at 1083 (citing *Washington v. Shalala*, 37 F.3d 1437, 1441 (10th Cir. 1994)); *see also* R. at 361. Further, plaintiff's medical records contain diagnosis and treatment records from other medical professionals of which Dr. Harazin and Dr. Mylar were aware, such as when, in January 2012, plaintiff was hospitalized and, upon evaluation, diagnosed with severe bipolar disorder with psychotic features. R. at 535; *see also* R. at 536 (plaintiff saw Dr. Harazin "shortly after discharge"); R. at 360 (referring to plaintiff's "most recent hospitalization"). Therefore, the Court finds that the ALJ erred in finding that the treating doctors' opinions were contradicted by Dr. Harazin's treatment notes and lacked support. *See Musgrave*, 966 F.2d at 1374. The Court will reverse the ALJ's decision and remand for further proceedings consistent with this order.

The Court declines to address plaintiff's remaining objections to the ALJ's decision because they may be affected by the ALJ's treatment of the case on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the

remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand").

## V. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this order.

DATED September 27, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge